

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RMT/AAS:ICR/JEA

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 1, 2020

<u>By E-Mail and ECF</u>

The Honorable Steven M. Gold
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Samantha Shader
             <u>Magistrate Docket No. 20-402</u>

Dear Judge Gold:

      Later today, defendant Samantha Shader is scheduled to be presented before Your Honor on the above-referenced complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because the defendant presents a severe and ongoing danger to the community and a serious risk of flight.

I.      The Offense Conduct[1]

      On the night of May 29, into the early morning of May 30, 2020, thousands of people held large demonstrations in Brooklyn, New York to protest the death of George Floyd, an African-American man who died during an arrest by Minneapolis police officers earlier that week. During the otherwise lawful demonstrations, certain individuals and groups of individuals unlawfully obstructed the flow of vehicle traffic on city streets and refused commands from New York City Police Department ("NYPD") officers to leave the streets and return to the sidewalks. Some individuals and groups of individuals vandalized vehicles and businesses with graffiti and smashed the vehicles and windows of the businesses with heavy objects. Some individuals and groups of individuals targeted the NYPD, vandalizing NYPD vehicles that had responded to the protests, and in some cases,

---

[1]      Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

attempting to gain access to NYPD stationhouses without authorization, thus interfering and obstructing the NYPD's efforts to maintain and restore order.

In the late hours of May 29, 2020, the defendant Samantha Shader approached an NYPD vehicle parked in the vicinity of Eastern Parkway and Washington Avenue in Crown Heights, Brooklyn. A video provided to law enforcement from a witness captured the events. The video initially shows Shader light an incendiary device – specifically, a bottle containing an incendiary chemical (sometimes referred to as a "Molotov cocktail" device) – while an unidentified male attempts to shield Shader from onlookers. Shader then threw the Molotov cocktail at the NYPD vehicle, which was occupied by four NYPD officers. The Molotov cocktail shattered two windows of the NYPD vehicle on impact and caused internal damage to the NYPD vehicle. The officers were able to escape the vehicle before being seriously injured. An image of the defendant Shader throwing the Molotov cocktail is shown below.



After observing Shader throw the Molotov cocktail, officers pursued and apprehended Shader while she attempted to flee. Shader attempted to resist the officers and assaulted one of the officers by biting him in the leg.

Thereafter, Shader was charged in the Eastern District of New York with causing damage by fire and explosives of a police vehicle, in violation of 18 U.S.C. § 844(i).

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Sections 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, these factors weigh heavily against pretrial release.

For certain offenses, including the offense charged in the Complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that she is neither a danger nor a risk of flight. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130-31. In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession--one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

3

III.     The Court Should Enter a Permanent Order of Detention

The factors to be considered in the detention analysis show that the defendant presents both a severe and ongoing danger to the community and a serious risk of flight if released on bond.  Because the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community, and because that presumption cannot be rebutted for the reasons set forth below, the Court should enter a permanent order of detention for the defendant pending trial.

   A.     The Nature and Circumstances of the Offense Charged

The defendant's criminal conduct was extraordinarily serious.  She hurled a Molotov cocktail at an NYPD vehicle with emergency lights on and occupied by four police officers, causing damage to the vehicle and putting the officers' lives in serious danger. Moreover, the defendant committed this violent act while surrounded by dozens of innocent bystanders who could have been injured or killed by her attack.

The defendant's motivation is not in question here – she wanted to cause harm to NYPD officers and damage NYPD property.  She continued attacking the officers when they sought to apprehend her, biting one of those officers in the leg.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence, a Federal crime of terrorism, or a crime involving an explosive or destructive device.  See 18 U.S.C. § 3142(g)(1).  The charged offense falls within multiple such categories, confirming that Congress viewed this crime as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of the charged offense by specifically enumerating 18 U.S.C. § 844(i) among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond.  Specifically,  Section 844(i), which carries a maximum term of 20 years' imprisonment, is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed," see 18 U.S.C. § 3142(e)(3)(C), and therefore gives rise to a presumption of detention.

The defendant faces a mandatory minimum sentence of five years' imprisonment and up to 20 years' imprisonment.  The prospect of a lengthy term of incarceration may reasonably incentivize the defendant to flee and thus establishes the defendant's status as a serious risk of flight. United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

4

B.  The Weight of the Evidence

The weight of the evidence in this case is overwhelming. The defendant was caught on camera firebombing an NYPD vehicle. Even more, the defendant, after being advised of and waiving her Miranda rights, admitted to possessing the Molotov cocktail and throwing it at the NYPD vehicle. Shader further admitted to resisting arrest and that she bit one of the police officers on the leg. Moreover, the defendant was arrested with clothes that are consistent with the clothes that the defendant is wearing in the video.

C.  The Defendant's History and Characteristics

Since 2011, the defendant has travelled the country committing various crimes, which include acts of violence and resisting arrest. The defendant has been arrested 11 times in 11 different states. The defendant's convictions include: (i) a March 2013 conviction in Austin, Texas for assault causing bodily injury, in violation of Texas Penal Code § 22.01(a)(1); (ii) a February 2017 conviction in Shawnee, Oklahoma for possession of a controlled substance in which she was sentenced to 60 days' imprisonment; and (iii) a January 2019 conviction in Waterford, Connecticut for interference with an officer, in violation of Connecticut Code § 53a-167a.

None of these convictions has dissuaded the defendant from continuing to commit crimes, nor from escalating her crimes to the point where her actions could have seriously injured or killed four police officers and numerous bystanders in the vicinity of where she threw the Molotov cocktail.

Although the defendant has not served a significant prison term yet, she has demonstrated, at every turn, disregard and contempt for the judicial system and for the law-abiding public. Moreover, the defendant has previously had at least one bench warrant issued for failure to appear in court, further demonstrating her disregard for the judicial system. Accordingly, the defendant's history and characteristics further confirm that she presents a substantial risk of flight and danger to the community.

D.  The Nature and Seriousness of the Danger to the Community Posed by Release

As discussed above, the defendant poses a severe and ongoing risk to the community. The defendant has already shown an interest in conducting violent attacks against the NYPD and has been successful in causing damage and destruction. The defendant's criminal history shows a complete lack of respect for the law and for law enforcement officials. Nothing in the defendant's history shows that, if placed on pretrial release, she would comply with the law or with any release conditions. Accordingly, amid the ongoing social unrest in New York City, the government respectfully submits that this defendant's history suggests that, if placed on pretrial release, she would return to rioting, destroying property, and endangering others.

5

IV.     Conclusion

   For all of the foregoing reasons, including the legal presumption that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community, the government respectfully submits that the Court should thus enter permanent orders of detention pending trial.

                Respectfully submitted,

                RICHARD P. DONOGHUE
                United States Attorney

          By: /s/
             Ian C. Richardson
             Jonathan E. Algor
             Assistant U.S. Attorneys
             (718) 254-7000

cc:     Clerk of Court (by ECF)